No. 23-60617

**THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

| | |
|---|---|
| SAUL ORTEGA AND DAVID ROGERS, JR. | ) ) ) |
| Petitioners | ) ) |
| vs. | ) ) |
| OFFICE OF THE COMPTROLLER OF THE CURRENCY | ) ) ) |
| Respondent | ) ) |

On Petition for Review of Final Decision of the Comptroller of the Currency
Entered on December 1, 2023 by the Office of the
Comptroller of the Currency
Case Nos. AA-EC-2017-44 and AA-EC-2017-45

**BRIEF FOR *AMICUS CURIAE***
**TEXAS BANKERS ASSOCIATION**
**IN SUPPORT OF PETITIONER**

Celeste Embrey
*Counsel of Record*

James J. Butera
Ryan D. Israel
*Counsel for Texas
Bankers Association*

November 12, 2024

**STATEMENT OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 also have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1. The Texas Bankers Association ("TBA"), *Amicus Curiae*, represented by:

Celeste Embrey
General Counsel
Texas Bankers Association
203 W 10th St.
Austin, TX 78701

James J. Butera
Ryan D. Israel
Meeks, Butera & Israel
2020 Pennsylvania Ave., NW
Washington, DC 20006

2. The TBA is a nonprofit, tax-exempt organization incorporated in the State of Texas. The TBA has no parent corporation, and no publicly held company has 10% or greater ownership in the TBA.

Dated: November 12, 2024

/s/ Celeste Embrey
Celeste Embrey
TEXAS BANKERS ASSOCIATIONS
(512) 472-8388
celeste@texasbankers.com

i

# TABLE OF CONTENTS

INTEREST OF *AMICUS CURIA* ...........................................................................1

STATEMENT REGARDING PARTIES' CONSENT……………………………… 2

INTRODUCTION AND SUMMARY OF ARGUMENT .....................................3

FACTUAL BACKGROUND ……………………………………………………….4

ARGUMENT ...........................................................................................................7

    I.      There is No Basis to Distinguish the OCC or the OCC Claims against the Petitioners from the SEC and its "Common Law Causes of Action" which formed the Basis for the *Jarkesy* Decision ………………………................7

    II.    The Petitioners' Request for a Jury Trial Was Improperly Denied after *Jarkesy* Became Controlling Precedent in this Circuit …………………9

    III.   The OCC and the ALJ Erred in Considering and Applying the Statute of Limitations to the Facts of this Case…………………………………13

CONCLUSION ......................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs,* 781 F.3d 1271
(11th Cir. 2015) ……………………………………………………..13

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687(1999) …...9

*De La Fuente v. FDIC,* 332 F.3d 1209 (2003)………………………………………15

*FDIC v. Abraham,* 137 F.3d 264 (5th Cir. 1998) …………………………………10

*Fla. Bankers Ass'n and Tex. Bankers Ass'n v. U.S. Dep't of the Treasury,* 799
F.3d 1065 (D.C. Cir. 2015) ……………………………………….…….1

*Gabelli v. SEC,* 568 U.S. 442 (2013) ………………………………………………14

*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989) …………………………...9

*Harmon v. Thornburgh,* 878 F.2d 484 (D.C. Cir. 1989) …………………………13

*Health Freedom Defense Fund v. Biden*, 599 F. Supp. 3d 1144
(M.D. Fla. 2022) ………………………………………………………13

*Jarkesy v. SEC,* 34 F.4th 446 (5th Cir. 2022) ……………………………………..6

*Morgan v. U.S.,* 304 U.S. 1 (1938) ………………………………………………..3

*Murray's Lessee v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.) 272
(1855) ……………………………………………………………….. 4,8

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs,* 145 F.3d 1399
(D.C. Cir. 1998) …………………………………………………… 12

*SEC v. Jarkesy,* 144 S. Ct. 2117 (2024) …………………………………………....3

*Tex. Bankers Ass'n, et al. v. Bd. of Governors of Fed. Res. System,* No. 24-10367
(5th Cir. 2024) ………………………………………………………2

*Tex. Bankers Ass'n, et al. v. Consumer Financial Protection Bureau, et al.,* No. 24-40705 (5th Cir. 2024) …………………………………………....…..2

**Constitutional and Statutory Provisions**

U.S. Const. Amendment VII ……………………………………………8, 9

5 U.S.C. § 706 …………………………………………………………...13

5 U.S.C. §§ 551 *et. seq.* ………………………………………………...2

12 U.S.C. § 93 …………………………………………………………...11

12 U.S.C. § 1818(c) ……………………………………………………...11

12 U.S.C. § 1818(i) ……………………………………………………11

15 USC § 78u ……………………………………………………………11

15 U.S.C. § 6809(2) ……………………………………………………8

28 U.S.C. § 2462 ………………………………………………………4,14

**Other Authorities**

Federal Rules of Appellate Procedure ……………………………………2

Federal Rules of Civil Procedure ………………………………………..12

Horan, David L., "The Rules that Govern the Rules that Govern in the Federal Courts of the Fifth Circuit," 67 Tex. B.J. 622-29 (2004) (September, 2004) …...10

Sohoni, Mila, "The Power to Vacate a Rule" (October 1, 2020), 88 George Washington Law Review 1121 (2020) ………………………………………..13

iv

## INTEREST OF AMICUS CURIA

The Texas Bankers Association ("TBA") is the oldest and largest state banking organization in the United States.  TBA advocates in both Austin and Washington, D.C. for its 400 member banks headquartered or doing business in the State of Texas.  TBA also invests directly in Texas communities through financial literacy, scholarships, and other charitable activities.  TBA's membership consists of mostly small to medium size banks with a median asset size of approximately $357 million.  While its member banks employ over 200,000 individuals throughout the state, the median employment at each of its individual member banks is fewer than 50 employees.

In addition to its legislative advocacy at the state and federal level, TBA comments on proposed regulations by the many federal Executive Branch and Administrative Agencies with jurisdiction over the banking industry to include the regulation and interpretation of law issued by Respondent in this proceeding.

TBA also represents the interests of its members in matters before the federal Judiciary that raise issues of concern for the day-to-day operations of the state's banking institutions as pertains to the communities in which they do business.  To that end, TBA has directly filed cases in federal court on regulations, for example, which are deemed to exceed statutory limitations,[1] or otherwise violate the

---

[1] *Fla. Bankers Ass'n and Tex. Bankers Ass'n v. U.S. Dep't of the Treasury,* 799 F.3d 1065 (D.C. Cir. 2015).

1

provisions of the Administrative Procedures Act ("APA") 5 U.S.C §§ 551-559.[2]

TBA has likewise joined as *amici curiae* in actions with other state and national trade

associations on matters raising significant public policies falling within the purview

of judicial review.[3]

The TBA also has a significant interest in the instant enforcement matter

which raises constitutional issues with far-reaching implications across the federal

financial regulatory structure. Our attention is also drawn by the other core legal

issue in this proceeding, namely the proper application of the statute of limitations

for loan agreements which constitute the essence of the banking business, and which

represent, on the balance sheets of U.S. chartered depository institutions, 15% of the

assets in the entire domestic financial sector.[4]

### STATEMENT REGARDING PARTIES' CONSENT

Pursuant to Rule 29(a)(2) of the Federal Rules of Appellate Procedure,

counsel for Amicus conferred with counsel for the Respondents and Petitioners, and

all parties consented to the filing of this brief as *amicus* in support of Petitioners.

---

[2] *Tex. Bankers Ass'n, et al. v. Consumer Financial Protection Bureau,* No. 24-40705 (5th Cir. 2024); *Tex. Bankers Ass'n, et al. v. Bd. of Governors of Fed. Res. System,* No. 24-10367 (5th Cir. 2024).
[3] *See Consumer Financial Protection Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd*., No. 22-448 (U.S. May 16, 2024).
[4] https://www.richmondfed.org/media/RichmondFedOrg/publications/research/working_papers/2024/wp24-07.pdf

## INTRODUCTION AND SUMMARY OF ARGUMENT

This petition presents a question in line with the emerging reexamination of federal administrative agencies, oftentimes with legislative branch encouragement, pushing beyond the limits built into the Constitution's separation of powers. Administrative law has traditionally been focused within the various aspects of the APA which, as adopted by Congress in 1946 (Pub. Law 79-404), was intended to establish a uniform set of rules governing the growing level of non-legislative governmental decision-making.  But the roots of the APA go back to the very foundations of the Republic as the Supreme Court clearly enunciated in 1938 that "[i]n administrative proceedings of a quasi-judicial character, the liberty and property of the citizen must be protected." *Morgan v. U.S.*, 304 U.S. 1, 4-5 (1938).

In *SEC v. Jarkesy* (144 S. Ct. 2117, 2128 (2024)), the Supreme Court held that an essential aspect of that liberty was the right to trial by jury.  The governmental entity in that case was the U.S. Securities and Exchange Commission created by Acts of Congress in 1933 and 1934 and supplemented by Congress with additional jurisdictional and enforcement powers in response to various financial crises.

This case, however, presents a very straightforward question, namely whether the enforcement agency involved, the Office of the Comptroller of the Currency ("OCC") established in 1864 as part of the U.S. Department of the Treasury, fits within the same constitutional and factual criteria set forth in the *Jarkesy* SEC case.

As to the first part of this analysis, there is clearly no structural basis to distinguish the SEC and its assigned Administrative Law Judge ("ALJ") from the OCC and the ALJ presiding over the subject matter of this Petition. Neither are Article III judges. As to this second part, and as will be further explained herein, the factual allegations set forth in both cases manifestly fall "within the subject of a suit at common law" and thus fall outside the "public rights" exceptions which, in certain limited exceptions, may be removed from Article III protections. *Jarkesy* at 2134 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855)). For these reasons, the OCC administrative proceeding against the Petitioners should be dismissed in its entirety.

In addition to the foregoing, it is respectfully suggested that this Court likewise not lend support by implication to the Respondent's novel theory that there is some form of an "alternate" statute of limitations applicable to the underlying claim of fraud attendant to this enforcement proceeding. *OCC Final Decision,* pp. 21-24. That theory purports to assert, without specified authority, that there is a "separate" occurrence for triggering the statutory five-year period (28 U.S.C. § 2462) when a financial loss first ensues to an insured depository institution regardless of when the loan may have been closed or any misconduct may have occurred.

This "alternative" flies in the face of the controlling statutory language that a claim "shall not be entertained unless commenced within *five* years from the date when the claim *first* accrued. *Id.*, *emphases added.* To hold otherwise would allow for claims to be asserted decades after loans such as lines of credit, open-ended credit, and especially mortgage loans have been closed for a period of up to 30 years. These are trillion-dollar credit markets in terms of both loans directly held by U. S. depository institutions and those originated but still outstanding by virtue of sale into the worldwide secondary market. As such, creative remedial theories should not be undertaken lightly.

## FACTUAL BACKGROUND

First National Bank, Edinburg, Texas ("FNB") was founded in 1934 and performed ably and safely in service to its local community for over 70 years. In the 1980s, Petitioner David Rogers, Jr., then FNB's largest shareholder, assumed the role as Chairman of the bank until retiring from banking in 2011.

Petitioner Saul Ortega joined FNB in 1987 and became the bank's Chief Financial Officer ("CFO") in 2000. At this time, he is the Chief Executive Officer of Texas National Bank, also located in East Texas.

As a consequence of the 2008-09 mortgage crisis, the FDIC closed 465 banks as compared to the five years prior when only ten banks failed.[5] FNB fell within

---

[5] https://www.fdic.gov/bank-failures/failed-bank-list

this category primarily as a result of a $174 million loss in the principal amount of its holdings of stock in Fannie Mae and Freddie Mac as well as losses of $3.5 to $4 million in monthly interest from these Government Sponsored Enterprises ("GSEs"). These are federally chartered companies operating under close federal supervision are at the heart of the U.S. residential mortgage market.[6]  They had always been deemed prudent investments by market participants worldwide and to be implicitly backed by the U.S. government since Fannie Mae was created by the Congress in 1938.

Due to the attrition of its capital caused by the failure of the GSEs, the FDIC closed FNB in 2013 and its assets and liabilities were sold to another Texas bank. Notwithstanding the applicable statutory five-year statute of limitations (28 U.S.C. § 2462), the OCC brought this enforcement action against Petitioners on September 25, 2017 for bank activities undertaken between 2008 and 2011. The Petitioners immediately moved before the ALJ to which this case was assigned by the OCC to dismiss all charges as time-barred while asserting other defenses as well.  On June 13, 2022, immediately after this Circuit's decision in *Jarkesy,*[7] Petitioners filed a

---

[6] The GSE mortgage-backed securities market was valued at $9 trillion at yearend 2023; there is no financial institution, pension fund, other asset manager, including the Federal Reserve, which does not hold these securities despite the companies being in federal receivership since 2008.
[7] 34 F.4th 446 (5th Cir. 2022).

Demand for Jury Trial seeking the empanelment of a jury of their "peers" to hear the case against them. The ALJ denied that request on July 7, 2022.

On September 30, 2022, the ALJ issued a ruling recommending: (1) an Order Prohibiting Petitioner Rogers from participating in the conduct of the affairs of any FDIC-insured bank, and (2) a $250,000 Civil Money Penalty against both Petitioners.

After cross-appeals regarding the ALJ's recommendations, the Acting Comptroller of the Currency issued a Final Order on December 1, 2023 imposing a Prohibition on engaging in the business of banking against <u>both</u> Petitioners and affirmed the $250,000 civil money penalty against both Petitioners. Petitioners immediately filed for Review of that Order with this Court and the OCC agreed to stay enforcement of the entire Order pending this Court's action.

## ARGUMENT

I.   There is No Basis to Distinguish the OCC or the OCC Claims against Petitioners from the SEC and its "Common Law Causes of Action" that Formed the Basis for the *Jarkesy* Decision

The OCC describes itself as "an independent bureau of the U.S. Department of the Treasury."[8] The word "independent" as used in the foregoing presumably means that the bureau's operations are not directed by the Treasury Secretary, but

---

[8] https://www.occ.gov/about/who-we-are/index-who-we-are.html

7

regardless of the intent, that term carries no legal significance for purposes of this case. The situation of both the OCC and the SEC is within the Executive Branch of the federal government. As such, the OCC likewise falls within admonition set forth by this Court in *SEC v. Jarkesy*:[9]

> The Constitution prohibits Congress from "withdraw[ing] from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law," *quoting Murray's Lessee at* 284.

Further cementing their coterminous nature, the term "Federal functional regulator" incorporates both entities (*e.g.*, 15 U.S.C. § 6809(2)(*emphases added*)):

> (A) the Board of Governors of the Federal Reserve System;
> (B) the *Office of the Comptroller of the Currency*;
> (C) the Board of Directors of the Federal Deposit Insurance Corporation;
> (D) the Director of the Office of Thrift Supervision;
> (E) the National Credit Union Administration Board; and
> (F) the *Securities and Exchange Commission*.

With respect to the nature of the claims which is the second criteria for purposes of determining jury trial protection, the test is likewise straightforward:

> In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of the common law. U.S. Const., Amend. VII.

As *Jarkesy* made clear at both the appellate and Supreme Court level, this means, in essence, all suits which are not of equity or admiralty jurisdiction. As

---

[9] 603 U.S. 2117 (2024).

stated in the affirmative by this Court: "[t]he Seventh Amendment guarantee[d] Petitioners a jury trial because the SEC's enforcement action [was] akin to traditional actions at law to which the jury-trial right attaches." *Jarkesy,* 34 F.4th 451.    In affirming, the Supreme Court said: "[t]he Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Jarkesy*, 144 S. Ct. 2128.

By "legal in nature," the well-established precedents further explain that the Seventh Amendment "applies not only to common-law causes of action but also to statutory causes of action '*analogous* to common-law causes of action.'" *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 708-09 (1999) (*quoting Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989)).

Lastly on this point, where the recent Supreme Court decision can fairly be described as dispositive, "money damages are the prototypical common law remedy." *Jarkesy*, at 2129.    It also follows that the Prohibition Orders in this case fall in the same category as simply another form of unwarranted, indeed, unconstitutional civil money penalty.

II.    The Petitioners' Request for a Jury Trial Was Improperly Denied after *Jarkesy* Became Controlling Precedent in this Circuit

This Court's decision in *Jarkesy* was promulgated on May 18, 2022.  Promptly thereafter, on June 13, 2022, the Petitioners filed a Demand for Jury Trial with the assigned ALJ which, as noted, was denied on July 7, 2022.  It is axiomatic that Court of Appeals' rulings are binding on the District Courts in the same circuit, and

thus a decision by the U.S. Court of Appeals for the Fifth Circuit binds all federal district courts within the State of Texas.[10]

Most often referred to as the doctrine of *stare decisis,* courts must abide by and adhere to their own or a higher court's precedent from decided cases. In fact, in a case specifically involving a Federal functional regulator, *supra*, the Fifth Circuit described itself as a "strict *stare decisis* court." *FDIC v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998).

It follows that, since at the time of the ALJ's issuance of their recommendations on September 30, 2022, *Jarkesy* was already controlling in the State of Texas. Instead, however, the ALJ reasoned as follows:

> While it is true that the Fifth Circuit is the circuit in which the depository institution in question was located prior to its failure, *the undersigned agrees with the dissent* in *Jarkesy* and finds that the conclusion that Respondents are not entitled to a jury trial. *In re Ortega* Order Denying Respondents' (Petitioners' here) Demand for Jury Trial and Motion to Dismiss p.3, fn. 4 (Emphasis added).

While perhaps commendable from the standpoint of candor, one must question the legal basis for adopting the dissenting view in what was clearly a Circuit opinion of controlling U.S. <u>constitutional</u> law with respect to this proceeding. This

---

[10] *See generally*, Horan, David L., "The Rules that Govern the Rules that Govern in the Federal Courts of the Fifth Circuit," 67 Tex. B.J. 622-29 (2004) (September, 2004). <u>https://www.google.com/search?q=Horan%2C+David+L.%2C+%E2%80%9CThe+Rules+that+Govern+the+Rules+that+Govern+in+the+Federal+Courts+of+the+Fifth+Circuit%2C%E2%80%9D+</u>

is an enforcement action wherein there is no dispute that both the home office and all of the business activity occurred within the State of Texas.

The ALJ and OCC vainly raise the identical objection that the OCC/ALJ process does not allow for trial by jury. *Id.*, at 2, *Final Decision* at 27, respectively. This argument begs the question as the very absence of the opportunity for a jury trial is the precise legal (constitutional) question at issue in the Petition.  It also overlooks the fact that the OCC, and other federal functional regulators, etc. are fully empowered to pursue enforcement actions directly in federal court.

The *Jarkesy* decision starts at page 1 with the observation that the "SEC may bring an enforcement action in one of two forms.  First, the Commission can adjudicate the matter itself… Alternatively, it can file a suit in federal court."  The latter, of course, would then offer any individual being charged with a violation to a jury trial option. 15 U.S.C. § 78u.

Here is the same power accorded the OCC and the other federal bank supervisory agencies:

**(i) Jurisdiction and enforcement; penalty**
(1) The appropriate Federal banking agency may in its discretion apply to the United States district court, or the United States court of any territory, within the jurisdiction of which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section…. and such courts shall have jurisdiction and power to order and require compliance herewith. 12 U.S.C. § 1818(i); see also 12 USC § 93, and unilateral Cease and Desist authority under 12 U.S.C. §1818(c).

After the issuance of the *Jarkesy* case at the appellate level, the first statutory enforcement option described above (i.e., U.S. District Court) became the only available means for the OCC to pursue an involuntary enforcement action in the Fifth Circuit states of Louisiana, Mississippi and Texas. This was the net result inasmuch as the second option (ALJ proceeding) had just been rendered inoperative on a post-*Jarkesy* basis for FDIC-insured banks with their home offices in those three states. Other Circuits, not being bound the Fifth Circuit, arguably remained under the *status quo ante* but the Ortega/Rogers actions and similarly situated proceedings should have come to an immediate halt.

In this regard, the OCC argument (*Id*. at 21-24) that the Petitioners assertion of their statute of limitations defense was untimely must also fail. As noted, this Court's decision in *Jarkesy* was published on May 18, 2022 and the Petitioners' response by way of incorporating that overarching authority into their case came a mere three weeks later (June 13, 2022).

Here it is also instructive to view this development from the standpoint of the analogous Federal Rules of Civil Procedure ("FRCP") which provide:

> Rule 38. Right to a Jury Trial; Demand
> (a) RIGHT PRESERVED. The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties *inviolate.*
> (b) DEMAND. On any issue triable of right by a jury, a party may demand a jury trial by:
>    (1) serving the other parties with a written demand—which may be included in a pleading—no later than 14 days after the last pleading directed to the issue is served.  (Emphasis added.)

Especially given the use of the word "inviolate" above, there is little room for doubt that both the OCC and the ALJ are advancing arguments as to both substance and process which have been mooted by the Fifth Circuit's 2022 decision in *Jarkesy* and its 2024 affirmation by the Supreme Court.

III.  The OCC and the ALJ Erred in Considering and Applying the Statute of Limitations to the Facts of this Case

Because the OCC and ALJ erred in declining to abide by the Petitioners' inviolate constitutional right to a jury trial regarding factual findings which were in dispute and which the Petitioners had expressly requested in a timely manner before the issuance of a Prohibition Order and Civil Money Penalty against them, the proper remedy is vacatur whereby a rule or order sets aside or, in effect annuls a proceeding.  *See, e.g., Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998): "[When] agency regulations are unlawful, the ordinary

result is that the rules are vacated…", quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 fn.21 (D.C. Cir. 1989).

"The APA requires that courts 'hold unlawful and set aside agency action' that violates the APA or exceeds the agency's authority. 5 U.S.C. § 706. 'Indeed, vacatur … is the ordinary APA remedy.'" *Health Freedom Defense Fund v. Biden*, 599 F. Supp. 3d 1144, 1176 (M.D. Fla. 2022); *quoting Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015).[11]

Thus, to begin with, it is not necessary to reach Respondents' novel theory that the facts of this case allow for a five-year Statute of Limitations to apply for seven years (*supra* at p. 6). Even if Respondent's legal construction were valid, which it is not, it cannot pertain here when the underlying juryless proceeding has been deemed unconstitutional by this Court and the Supreme Court.

Nevertheless, Amicus will briefly address the governing law. All parties agree that the applicable Statute of Limitations is 28 U.S.C. § 2462 providing as follows:

> [A]n action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim *first accrued*…." (Emphasis added.)

---

[11] *See also* Sohoni, Mila, "The Power to Vacate a Rule" (October 1, 2020). 88 George Washington Law Review 1121 (2020). San Diego Legal Studies Paper No. 20-450, Available at SSRN: https://ssrn.com/abstract=3599266.

"First accrued," under clear Supreme Court precedent, means when the purported "wrongful conduct occurred."[12]  *Gabelli v. SEC,* 568 U.S. 442, 445 (2013) specifically held that the "discovery" rule, providing that the statute of limitations in certain cases should typically begin to run only when the injury is or reasonably could have been discovered, does not "follow for the Government in the context of enforcement actions for civil penalties."  *Id*. at 445.

The reason for this, as stated in the unanimous Supreme Court opinion was that the "SEC, for example, is not like an individual victim who relies on apparent injury to learn of a wrong.  Rather, a central "mission" of the Commission is to "investigat[e] potential violations of the federal securities laws." *Id*.  In accord, applying the same standard to the federal bank supervisory agencies, *see De La Fuente v. FDIC* 332 F.3d 1209, 1219 (2003).

## CONCLUSION

For the reasons stated herein, Amicus respectfully submits that the Court should vacate the *Final Decision* of the Comptroller of the Currency in its entirety which may not, in our view, necessarily require the Court to address whether or how the Statute of Limitations doctrine my apply to the circumstances of the case at hand.

---

[12] OCC concedes that the last loan at issue in this proceeding occurred in March 2011 (Final Order at 80-81, fn. 39).

Celeste Embrey
General Counsel
Texas Bankers Association
203 W 10th St.
Austin, TX 78701

James J. Butera
Ryan D. Israel
Meeks, Butera & Israel
2020 Pennsylvania Ave., NW
Washington, DC 20006

Counsel for *Amicus Curia*

**CERTIFICATE OF COMPLIANCE**

With Type-Volume Limit, Typeface Requirements,
and Type-Style Requirements

I certify that this filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 3,557 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

This filing also complies with the typeface requirements of Federal Rule of Civil Procedure 32(a)(5) and Fifth Circuit Rule 32.1 and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Word for Microsoft 365 MSO Version 2406 in Time News Roman 14-point font typeface.

_____/s/_____

Celeste Embrey

## CERTIFICATE OF SERVICE

I, Celeste Embrey, counsel for Proposed Amicus, certify that on November 12, 2024, I caused a copy of the foregoing brief to be filed electronically through the appellate CM/ECF system with the Clerk of the Court, which provides electronic notice to all attorneys who have entered an appearance.

I further certify that (1) required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1: and (3) the document has been scanned for viruses and has been found to be free of viruses.

/s/ Celeste Embrey

Celeste Embrey