No. 23-60617

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

SAUL ORTEGA, Former Chief Financial Officer, Director, President, Chief Executive Officer, and Chairman of the Board; DAVID ROGERS, JR., Former Chairman of the Board,

*Petitioners*,

vs.

OFFICE OF THE COMPTROLLER OF THE CURRENCY,

*Respondent*.

On Petition for Review of the Final Decision of the Comptroller of the Currency, Nos. OCC AA-EC-2017-44, AA-EC-2017-45

## BRIEF OF *AMICUS CURIAE* THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF PETITIONERS' PETITION FOR REHEARING EN BANC

BRIAN A. KULP
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

JENNIFER B. DICKEY
KEVIN R. PALMER
U.S. CHAMBER LITIGATION
CENTER
1615 H Street, NW
Washington, DC 20062

STEVEN A. ENGEL
  *Counsel of Record*
MICHAEL H. MCGINLEY
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel for the Chamber of Commerce of the United States of America*

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS

<u>No. 23-60617</u>
*Ortega, et al. v. Office of the Comptroller of the Currency*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 also have an interest in the outcome of this case.  These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.   **The Chamber of Commerce of the United States of America**,

*Amicus Curiae*, represented by:

**Steven A. Engel**
**Michael H. McGinley**
**Brian A. Kulp**
**DECHERT LLP**

**Jennifer B. Dickey**
**Kevin R. Palmer**
**U.S. CHAMBER LITIGATION CENTER**

2.   The Chamber is a nonprofit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

Dated: October 28, 2025

*/s/ Steven A. Engel*
Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel of record for* Amicus Curiae

i

## TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE*............................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT......................................2

ARGUMENT...............................................................................................5

I.    Petitioners Have a Seventh Amendment Right to a Jury Trial. ....................5

II.    The Public Rights Exception Does Not Apply.............................................7

CONCLUSION.........................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T, Inc. v. FCC*,
   149 F.4th 491 (5th Cir. 2025) ..............................................................................7

*Bowsher v. Synar*,
   478 U.S. 714 (1986)...........................................................................................2

*Davis v. Elmira Sav. Bank*,
   161 U.S. 275 (1896)..........................................................................................10

*Easton v. Iowa*,
   188 U.S. 220 (1903)..........................................................................................10

*Erlinger v. United States*,
   602 U.S. 821 (2024).......................................................................................2, 3

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989)..............................................................................................4

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   597 U.S. 1 (2022)................................................................................................8

*Osborn v. Bank of U.S.*,
   22 U.S. (9 Wheat.) 738 (1824) ........................................................................10

*SEC v. Jarkesy*,
   603 U.S. 109 (2024)...................................................................................*passim*

*Tiffany v. Nat'l Bank of Missouri*,
   85 U.S. (18 Wall.) 409 (1873) .........................................................................10

*Commonwealth ex rel. Torrey v. Ketner*,
   92 Pa. 372 (1880).............................................................................................10

*Tull v. United States*,
   481 U.S. 412 (1987)........................................................................................3, 6

## Constitutional Provisions

U.S. Const. amend. VII ............................................................................3

## Statutes

12 U.S.C. § 1818(i)(2)(A) .....................................................................6, 7

12 U.S.C. § 1818(i)(2)(B) .....................................................................6, 7

12 U.S.C. § 1818(i)(2)(B)(ii)(II) ...............................................................6

12 U.S.C. § 1818(i)(2)(B)(ii)(III) ..............................................................6

12 U.S.C. § 1818(i)(2)(C) .....................................................................6, 7

12 U.S.C. § 1818(i)(2)(C)(ii) .....................................................................6

12 U.S.C. § 1818(i)(2)(G)(iii)....................................................................6

12 U.S.C. § 1818(i)(2)(G)(iv) ....................................................................6

12 U.S.C. § 1818(i)(2)(J) ...........................................................................7

Pub. L. No. 89-695, § 202, 80 Stat. 1046 (1966).......................................9

Pub. L. No. 95-630, § 107, 92 Stat. 3641 (1978).......................................8

## Other Authorities

3 William Blackstone, *Commentaries on the Laws of England* (1768) ....................2

Philip Hamburger, *Is Administrative Law Unlawful?* (2014)....................................3

## INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

Businesses, and corporate officers and directors, are frequent respondents in administrative enforcement actions brought by the Office of the Comptroller of the Currency ("OCC") and by other agencies. The Chamber thus has a significant interest in ensuring that those proceedings respect the Constitution's structural protections, including the Seventh Amendment. But the Panel's decision thwarts that fundamental right. Left unchecked, the Panel's expansive view of the "public rights" exception will enable government overreach through juryless proceedings across the administrative state. The Chamber urges this Court to grant rehearing.

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, its members, or its counsel, contributed money intended to fund this brief's preparation or submission.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Seventh Amendment gives Petitioners "the right to be tried by a jury of [their] peers before a neutral adjudicator." *SEC v. Jarkesy*, 603 U.S. 109, 140 (2024). The OCC's imposition of civil penalties against Petitioners through an in-house proceeding is an affront to that guarantee. And the Court should have vacated the agency's juryless decision. The Panel's refusal to do so defies the Supreme Court's decision in *Jarkesy* and warrants en banc review.

The Framers recognized that "structural protections against abuse of power [are] critical to preserving liberty." *Bowsher v. Synar*, 478 U.S. 714, 730 (1986). And key among those structural protections was the right to trial by jury. At the time of the Founding, that "most excellent method of decision" had long been hailed as "the glory of the English law." 3 William Blackstone, *Commentaries on the Laws of England* 391 (1768). And it was "prized by the American colonists" in both criminal and civil cases alike. *Jarkesy*, 603 U.S. at 121.

The Seventh Amendment arose out of the English effort to "siphon[]" the adjudication of civil cases that had traditionally been tried before juries to "juryless admiralty, vice admiralty, and chancery courts." *Id.* "[A]s tensions grew between the British Empire and its American Colonies, imperial authorities responded by stripping away th[e] ancient [jury trial] right" on this side of the Atlantic. *Erlinger v. United States*, 602 U.S. 821, 829 (2024). Most notably, the Crown expanded

2

admiralty jurisdiction in the 1760s to enforce unpopular Acts of Parliament without the involvement of juries. *See* Philip Hamburger, *Is Administrative Law Unlawful?*, 150-51 (2014). Just as authorities envisioned, this "tactic proved 'most effective' at securing the verdicts they wished." *Erlinger*, 602 U.S. at 829 (citation omitted).

"After securing their independence, the founding generation sought to ensure what happened before would not happen again." *Id.* The States thus quickly ratified the Seventh Amendment to "preserve[]" the civil jury right in "Suits at common law." U.S. Const. amend. VII. And the people understood this language to "embrace[] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *Jarkesy*, 603 U.S. at 122 (citation omitted).

That includes suits like this one, where the OCC seeks civil penalties. "A civil penalty was a type of remedy at common law that could only be enforced in courts of law." *Tull v. United States*, 481 U.S. 412, 422 (1987). And it could hardly be otherwise. Rerouting such enforcement actions through in-house administrative proceedings would eradicate the jury's crucial check on bureaucratic overreach while "concentrat[ing] the roles of prosecutor, judge, and jury in the hands of the Executive Branch." *Jarkesy*, 603 U.S. at 140. "That is the very opposite of the separation of powers that the Constitution demands." *Id.*

3

Yet that is what the Panel authorized here. It did not dispute that the OCC is pursuing a classic legal form of relief. That should have been "all but dispositive" of the Seventh Amendment inquiry. *Id.* at 123. And the "close relationship" between the claim in this case and traditional common-law tort actions for negligence and fraud only "confirms that conclusion." *Id.* at 125.

The Panel erred by relying upon the "public rights" exception. Such an exception to the Seventh Amendment is exceedingly narrow and does not apply absent a showing that "'withdraw[al] from judicial cognizance'" has firm roots in "background legal principles." *Id.* at 131-32 (citation omitted); *see also id.* at 153 (Gorsuch, J. concurring). The Panel did not identify any such deeply rooted history. It instead "emphasize[d] that there were no federally chartered banks until Congress authorized them," and that Congress eventually "assigned enforcement to the executive branch." ECF 125-1 ("Op.") at 17-18. Both statements approach tautology, and under *Jarkesy*, are beside the point. "Even when an action 'originates in a newly fashioned regulatory scheme,' what matters is the substance of the action, not where Congress has assigned it.'" *Jarkesy*, 603 U.S. at 134 (alteration adopted) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 52 (1989)).

In the end, the Panel's decision conflicts with *Jarkesy*. There is no history that supports removing these garden-variety legal claims from the Article III

4

courts—and the jury review that the Constitution requires. This Court should grant rehearing.

## ARGUMENT

### I.   Petitioners Have a Seventh Amendment Right to a Jury Trial.

Rehearing is necessary to uphold the Seventh Amendment's protections against government overreach. The OCC's pursuit of civil penalties in a juryless administrative tribunal bears a striking resemblance to the British admiralty courts that deprived colonists of their legal rights in the 1760s—as well as the SEC's pursuit of civil penalties rejected in *Jarkesy*.

In *Jarkesy*, the Supreme Court held that "the Seventh Amendment entitles a defendant to a jury trial when the SEC seeks civil penalties against him for securities fraud." 603 U.S. at 120. Along the way, the Court stressed that "whether [a] claim is statutory is immaterial" to the Seventh Amendment analysis. *Id.* at 122. Rather, "[t]he Seventh Amendment extends to a particular statutory claim if the claim is 'legal in nature.'" *Id.* (citation omitted). And "[t]o determine whether a suit is legal in nature," the Court "consider[ed] the cause of action and the remedy it provides," while noting that the remedy was the "'more important' consideration." *Id.* at 122-23 (citation omitted). The "civil penalties in [that] case [were] designed to punish and deter, not to compensate," and they were accordingly "'a type of remedy at common law that could only be enforced in courts of law.'" *Id.* at 125 (citation

omitted).  As a result, the SEC could not pursue them through an in-house adjudication.  *See id.* at 122-27.

So too here.  As in *Jarkesy*, the "remedy is all but dispositive" of Petitioners' Seventh Amendment right to a jury trial.  *Id.* at 123.  The OCC "seeks civil penalties, a form of monetary relief."  *Id.*  And "a monetary remedy is legal if it is designed to punish or deter the wrongdoer."  *Id.*  That is because "[r]emedies intended to punish culpable individuals, as opposed to those intended simply to extract compensation or restore the status quo," were historically issued only "by courts of law, not courts of equity."  *Tull*, 481 U.S. at 422; *see also Jarkesy*, 603 U.S. at 123.  In fact, "[a]ctions by the Government to recover civil penalties under statutory provisions" were long "viewed as one type of action in debt requiring trial by jury."  *Tull*, 481 U.S. at 418-19.

The Panel did not dispute that the penalties in this case seek to deter and punish Petitioners.  Nor could it.  Like the statute in *Jarkesy*, section 1818(i) conditions the amount and availability of civil penalties on the defendant's state of mind, *see* 12 U.S.C. § 1818(i)(2)(A)-(C); his "history of previous violations," *id.* § 1818(i)(2)(G)(iii); the amount of loss to a banking institution and the defendant's pecuniary gain, *see id.* § 1818(i)(2)(B)(ii)(II)-(III), 1818(i)(2)(C)(ii); and "such other matters as justice may require," *id.* § 1818(i)(2)(G)(iv).  "Of these, several concern culpability, deterrence, and recidivism," which are the hallmarks of punishment

statutes. *Jarkesy*, 603 U.S. at 123-24. In addition, section 1818(i) mirrors the statute in *Jarkesy* by providing for three tiers of civil penalties, with "[e]ach successive tier authoriz[ing] a larger monetary sanction." *Id.* at 124; *see* 12 U.S.C. § 1818(i)(2)(A)-(C). And the OCC "is not obligated to return any money to victims." *Jarkesy*, 603 U.S. at 123. The penalties recovered "shall be deposited into the Treasury." 12 U.S.C. § 1818(i)(2)(J).

All this shows that the "civil penalties in this case are designed to punish and deter." *Jarkesy*, 603 U.S. at 125. That "effectively decides that this suit implicates the Seventh Amendment right" to a jury trial. *Id.* And, as Petitioners correctly explain, *see* Reh'g Pet. at 4, 16-17, the OCC's claim "'targets the same basic conduct' as [a] common law claim" for negligence or fraud, *AT&T, Inc. v. FCC*, 149 F.4th 491, 499 (5th Cir. 2025) (alteration adopted; citation omitted) (negligence); *see Jarkesy*, 603 U.S. at 125-26 (fraud). The Panel did not dispute that either. *See* Op. at 20 (recognizing that section 1818 was "enacted to combat fraud and abuse, and that unsafe banking practice allegations ring in professional negligence"). The OCC's Seventh Amendment violation here was as straightforward as they come.

## II.   The Public Rights Exception Does Not Apply.

The Panel held otherwise by stretching the public rights exception beyond any meaningful bounds. *Jarkesy* rejected precisely such a move.

The Panel tried to distinguish *Jarkesy* by noting that section 1818 "has never authorized the OCC or other banking regulators to choose their forum when seeking civil penalties in enforcement actions." Op. at 13. But, as the Panel conceded, that legal framework was forged in the late twentieth century. *See id.* at 17 (citing Pub. L. No. 95-630, § 107, 92 Stat. 3641, 3660-61 (1978)). It thus has no bearing on the Seventh Amendment inquiry. "Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 34 (2022) (citation omitted). And by "'embedd[ing]' the [jury trial] right in the Constitution," the Framers made sure to "secur[e] it 'against the passing demands of expediency or convenience.'" *Jarkesy*, 603 U.S. at 122 (citation omitted). A legislative decision that long postdated the Founding cannot "transmute a private right into a public one" to curtail that fundamental right. *Id.* at 131 n.2. Were it otherwise, Congress could nullify the Seventh Amendment by legislative fiat. The Framers did not ratify such a hollow protection.

The Panel next suggested that OCC enforcement actions are "meant to vindicate safety to the banking ecosystem at large." Op. at 14. But that policy argument cannot overcome the Seventh Amendment. For one thing, it is not true here. The Panel admitted that "the lending-related misconduct [at issue] was like a 'private transaction' between the Bank and each borrower, and that petitioners'

8

accounting-related efforts to conceal the true nature of these circular transactions resembles fraud." *Id.* at 14 n.13. *Jarkesy* is on all fours with this case. *See* 603 U.S. at 135-36.

In any event, there is nothing unusual about "federally insured and nationally chartered banks" that would prevent an Article III court and a jury from adjudicating civil penalty claims like these. Op. at 14. Such banks are privately run by individuals with Seventh Amendment rights. And the Panel's suggestion that the Seventh Amendment falls away when "public funds" are implicated is simply wrong. *Id.* "[D]espite its misleading name, the [public rights] exception does not refer to all matters brought by the government against an individual to remedy public harms." *Jarkesy*, 603 U.S. at 152 (Gorsuch, J., concurring) (emphasis omitted). "Instead, public rights are a narrow class defined and limited by history." *Id.*; *see also id.* at 130-32 (majority op.). The Panel cited no history (save for the 1970s statute at issue) of removing civil penalty claims involving federally chartered banks from judicial cognizance.

If anything, the "history of the major banking regulatory laws" that the Panel *did* rely upon only underscores the mistake. Op. at 15. The Panel noted that Congress "authorized federally chartered banks" during the Civil War. *Id.* at 16. But it did not provide for "adjudicative enforcement hearings" for claims involving such banks until over a century later. *Id.* at 17 (citing Pub. L. No. 89-695, § 202, 80

9

Stat. 1046, 1051 (1966)).  Thus, far from providing evidence of "background legal principles" supporting juryless adjudications, this history shows the opposite. *Jarkesy*, 603 U.S. at 131.  It demonstrates a longstanding tradition of Article III adjudication—before juries—for claims involving federally chartered banks.

The legislature's eventual decision to abandon that historical practice does not nullify the jury trial right.  Congress cannot "conjure away the Seventh Amendment by mandating that traditional legal claims be taken to an administrative tribunal." *Id.* at 135 (alteration adopted; citation omitted).  Nor does anything in the caselaw cited by the Panel support its backwards view of the public rights exception.  The decision the Panel found "[m]ost directly on point" did not discuss the Seventh Amendment at all.  Op. at 19 (citing *Easton v. Iowa*, 188 U.S. 220, 232-33 (1903)).  And that case was tellingly tried *before a jury*.  *See Easton*, 188 U.S. at 227.  The Supreme Court reversed only because the state-law charge was preempted by federal law.  *See id.* at 231-32, 239.  The same goes for other decisions cited by the Panel; they raised issues of preemption or the relationship between state and federal law, not issues of public rights.  *See Davis v. Elmira Sav. Bank*, 161 U.S. 275, 283-84, 290 (1896); *Tiffany v. Nat'l Bank of Missouri*, 85 U.S. (18 Wall.) 409, 412-13 (1873); *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 867-68 (1824); *Commonwealth ex rel. Torrey v. Ketner*, 92 Pa. 372, 377 (1880).

Finally, the Panel noted there were no "regulatory causes of action" involving "federally chartered banks" in the 18th century.  Op. at 17.  But the fact that the claim at issue "'originated in a newly fashioned regulatory scheme'" does not "permit Congress to siphon this action away from an Article III court." *Jarkesy*, 603 U.S. at 135 (alteration adopted; citation omitted).  "Again, what matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Id.* The substance of this suit is a common-law action seeking civil penalties for a claim that is analogous to fraud or negligence.  That claim belongs before a jury in an Article III court.

* * *

In short, "[t]he right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 603 U.S. at 121 (citation omitted).  The Panel failed to do that here, and its capacious view of the public rights doctrine promises an "exception that [will] swallow the rule." *Id.* at 131.  This Court should grant rehearing to stop that dangerous expansion of administrative authority in its tracks.

## CONCLUSION

The Court should grant rehearing.

Respectfully Submitted,

/s/ Steven A. Engel

BRIAN A. KULP
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

JENNIFER B. DICKEY
KEVIN R. PALMER
U.S. CHAMBER LITIGATION
CENTER
1615 H Street, NW
Washington, DC 20062

STEVEN A. ENGEL
  Counsel of Record
MICHAEL H. MCGINLEY
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel for the Chamber of Commerce of the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2025, I caused the foregoing *amicus curiae* brief to be filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit. The Court's CM/ECF system was used to file the brief, and service will therefore be accomplished by the CM/ECF system on all CM/ECF-registered counsel.

Dated: October 28, 2025

*/s/ Steven A. Engel*
Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel of record for* Amicus Curiae

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because it contains 2,582 words, excluding those portions of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Times New Roman 14-pt font.

Dated: October 28, 2025

*/s/ Steven A. Engel*
Steven A. Engel
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
(202) 261-3369
steven.engel@dechert.com

*Counsel of record for* Amicus Curiae